29445. FORRESTER, commissioner *v.* GEORGIA MILK PRODUCERS CONFEDERATION.

DECIDED FEBRUARY 28, 1942.

*Ellis G. Arnall, attorney-general, Andrew J. Tuten, assistant attorney-general, Claude Shaw,* for plaintiff.

*Morgan Belser,* for defendant.

FELTON, J. The Commissioner of Revenue of the State of Georgia issued an execution for $100, principal, together with penalty and interest, against the Georgia Milk Producers Confederation to collect an occupation tax allegedly due by the confederation for engaging in the manufacture of ice cream in the year 1937. The commissioner filed a general demurrer to the affidavit of illegality filed by the confederation, which was overruled, and the commissioner excepted.

The affidavit of illegality alleged that the defendant is a corporation, commonly known as a cooperative marketing association, chartered under the cooperative marketing act of 1921, Code § 65-201 et seq., Ga. Laws, 1921, p. 139, and that it was exempt from the payment of the occupation tax required by the act of 1935, p. 36, now included in Code § 92-1002. It alleged that it had paid the license fee required by the act of 1921 for the year 1937 and all subsequent years. There is no constitutional question raised, so the only question for determination is what the legislature meant by the following language: "Each association organized hereunder shall pay an annual license fee of $10, but shall be exempt from all franchise or license taxes" (Code § 65-225); and whether the manufacture of ice cream is one of the authorized functions of the defendant in this case.

■ The Code, § 65-213, provides among other things: "(a) To engage in any activity in connection with the marketing, selling, harvesting, preserving, drying, processing, canning, packing, storing, handling, ginning or utilizing of any agricultural products produced or delivered to it by its members; or the manufacturing or marketing of the byproducts thereof; or in connection with the purchase, hiring, or use by its members of supplies, machinery or equipment; or in the financing of any such activities; or in any one or more of the activities specified in this section. The association, however, may handle and deal in the agricultural products of nonmembers equal in value to, but not greater in value than, that handled by it for members. . . (h) To do everything necessary, suitable or proper for the accomplishment of any one of the purposes or the attainment of any of the objects herein enumerated; or conducive to or expedient for the interest or benefit of the association; and to contract accordingly; and to exercise and possess all powers, rights and privileges necessary or incidental to the purposes for which the association is organized or to the activities in which it is engaged; and in addition, any other rights, powers and privileges granted by the laws of this State to ordinary corporations, except such as are inconsistent with express provisions of this law; and to do any such thing anywhere." Under the above authority it seems that the defendant is within its charter powers in the manufacture of ice cream from milk delivered to it by its members.

■ What is meant by "all franchise or license taxes" in the Code, § 65-225? Is "franchise" to be construed to mean the same as "license," or is "license" to be construed to mean the same as "franchise"? Of course, if the words are not used as synonyms, and the "or" is construed to mean "and," clearly the defendant is exempt from the payment of the license tax, which is the same as an occupation tax, as herein used. *City of Waycross* v. *Bell,* 169 Ga. 57 (149 S. E. 641); Brown Forman Co. *v.* Kentucky, 217 U. S. 563 (30 Sup. Ct. 578, 54 L. ed. 883). The word "franchise" has been used to denote various meanings. The true meaning "is the privilege of doing that 'which does not belong to the country generally by common right'" 23 Am. Jur. 714, § 2. The Code, § 92-2301, defines "special franchise," and it will be observed that the term "special franchise" is the same as "franchise," when the latter is used in its true sense. The section ends with the following expression: "But the term 'special franchise' shall not include the mere right to be a corporation engaged in trading or manufacturing and exercising no specific franchise above enumerated." It will be observed that the defendant and like corporations are not empowered to own a franchise, in the true sense of the word, which would be subject to taxation as property. Likewise, we know of no case in which a tax on capital stock has been called a "franchise" tax, so we are driven to the inescapable conclusion that the legislature did not use the word in its true sense, or as meaning "capital stock," but used it in a loose and more general sense, as being synonymous with "license," which in turn is synonymous with "occupation tax." The Code, § 92-2401, providing for taxes on certain corporations, also uses the words "license" and "occupation" tax synonymously. Under the Code, § 65-225, the defendant is exempt from the payment of the occupation tax fixed upon the manufacturers of ice cream under Ga. L. 1935, p. 36, § 57. The statute is susceptible of only one reasonable construction. The court did not err in overruling the general demurrer to the affidavit of illegality.

*Judgment affirmed. Stephens, P. J., concurs. Sutton, J., concurs in the judgment.*