330 P.2d 337

**IDAHO WOOL MARKETING ASSOCIATION, a cooperative association, Plaintiff-Appellant,**

v.

**Harry H. MAYS, Defendant-Respondent.**

No. 8652.

Supreme Court of Idaho.

Oct. 3, 1958.

Gee & Hargraves, Pocatello, for appellant.

Anderson & Beebe, H. Wm. Furchner, Blackfoot, for respondent.

368

TAYLOR, Justice.

Plaintiff (appellant) is a nonprofit association organized under Chapter 124 of 1921 Session Laws, now Chapter 26, Title 22, Idaho Code. Defendant (respondent) was a member of the association. On or about June 8, 1951, defendant delivered to plaintiff 12,921 pounds of wool and executed with the association a marketing agreement by the terms of which the association was appointed his exclusive agent to sell the wool for him. Upon the execution of the agreement the association advanced to defendant the sum of $10,336.80. Such advance was authorized by statute (§ 22-2601, I.C.) and by the marketing agreement. Likewise, the statute (§ 22-2617, I.C.) and the agreement authorized the association to deduct the advance and other costs and expenses, incurred by it in handling and marketing the wool, from the amount received by it when the wool was sold.

Defendant's wool was later sold by the association for $7,664.61. After deducting expenses and other charges, defendant was credited with $6,026.88, leaving a balance of $4,309.92 of the advance which was not covered by the proceeds of the sale.

The association brought this action to recover the amount overadvanced.

The defendant, by various motions and demurrers, urged upon the trial court that the complaint did not state a cause of action because there was no allegation therein that the plaintiff had complied with the requirements of Chapter 124 of the Laws of 1935, now Chapter 14, Title 22, Idaho Code. This act requires track buyers of farm produce, among other things, to procure a license and furnish bond before engaging in the business covered by the act. This view was accepted by the trial court and after several amendments and upon plaintiff finally pleading that it had not complied with the track buyers law, the action was dismissed.

From the judgment of dismissal plaintiff prosecutes this appeal.

Although other issues are presented, the question as to whether or not plaintiff comes within the purview of the track buyers law is controlling and sufficient for the disposition of this appeal.

The cooperative marketing act was enacted in 1921 (Chap. 124). Its purpose was stated in the first section (§ 22-2601, I.C.) as follows:

"In order to promote, foster and encourage the intelligent and orderly marketing of agricultural products through cooperation and to eliminate speculation and waste, and to make the distribution of agricultural products as direct as can be efficiently done between producer and consumer, and to stabilize the marketing problems of agricultural products, this chapter is passed."

Section 22–2602, I.C. in part provides:

"Associations organized hereunder shall be deemed nonprofit, inasmuch as they are not organized to make profits for themselves, as such, or for their members, as such, but only for their members as producers."

"Five or more persons engaged in the production of agricultural products may form a nonprofit, cooperative association, with or without capital stock, under the provisions of this chapter." § 22–2603, I.C.

The membership of such association is limited to individuals or organizations engaged in agricultural production. § 22–2607, I.C. The association is authorized to contract with its members for the sale by or through it of all or any part of their agricultural products and "the association may sell or re-sell the products of its members, with or without taking title thereto * * *." § 22–2617, I.C.

Section 22–2620 of the act provides:

"Any provisions of law which are in conflict with this chapter shall not be construed as applying to the associations herein provided for."

"Each association organized hereunder shall pay an annual license fee of ten dollars, but shall be exempt from all franchises or license taxes." § 22–2627, I.C.

The pertinent provisions of the track buyers act are:

"The term 'track buyer' as used in this act shall be deemed to mean every person who shall receive on consignment or solicits from the producer thereof, any farm products for sale on commission on behalf of such producer, or who shall accept any farm products in trust from the producer thereof for the purpose of resale, or who shall sell or offer for sale on commission any farm products, or who shall buy, load or receive loaded any car, truck, or public carrier of farm products for shipment for resale, storage or processing.

\*      \*      \*      \*      \*      \*

"The term 'farm products' as used in this act shall be deemed to mean all field grains, dry beans, dry peas, seeds, wool and hay." § 22–1401, I.C.

"This act does not apply to or include:

"(a) Any cash buyer;

"(b) Any person who has a license to operate a public warehouse in this state that is receiving farm products for shipment by car, truck or public carrier to such warehouse within this state." § 22–1402, I.C. (Amended in 1957 to include cash buyers. Laws of 1957, Chap. 37).

"Before a person can lawfully operate as a track buyer or agent in this state, he must procure a license under this act." § 22–1403, I.C.

"Any person operating as a track buyer without a license shall forfeit to the state for each day's operation $50.00, and such operation may be enjoined upon complaint of the commissioner of agriculture." § 22–1404, I.C.

Section 22–1406, I.C., requires a bond to be given by track buyers.

Section 22–1407 authorizes action on the bond by any person injured by the breach of any obligation undertaken by a track buyer.

Section 22–1408 provides for an annual license fee not exceeding $25.00.

Section 22–1417, I.C. makes violation of the act a misdemeanor and provides the penalty therefor.

It is defendant's contention that the plaintiff association comes within the definition of "track buyer" contained in the 1935 track buyers act and, not being specifically exempted therefrom, is subject to the act, and having failed to comply therewith, its contract with defendant was made in violation of the act, and is therefore void and unenforceable.

It appears from the terms of the act itself, that the track buyers act was passed to protect agricultural producers of the state from losses resulting from the de-

fault of transient, irresponsible and inadequately financed buyers, having no warehouse within the state for the storage of products purchased. Such buyers loaded products, contracted for, directly into cars for shipment out of the state. When they defaulted the producer was left without a remedy.

The cooperative marketing act has a wholly different purpose, well expressed in § 22–2601, supra. It provides for a non-profit organization of producers associated for the orderly marketing of their own products. The association is not a buyer or speculator in the market for a commission or profit. It is not transient. For the most part its members are residents and property owners within the state. The association is owned and controlled by the producer members. Any worthwhile purpose to be served by requiring such an association to procure a track buyer's license, and furnish a bond for the faithful performance of its contracts with its members, would be minimal. Moreover, the act expresses the intent of the legislature to relieve such associations from the restrictive provisions of other laws, § 22–2620, I.C., supra, and it expressly exempts them from "all franchises or license taxes." § 22–2627, I.C., supra.

Defendant contends that the exemption "from all franchises or license taxes" contained in the cooperative marketing act was impliedly repealed by the

track buyers act passed fourteen years subsequent thereto. The applicable rule was stated, and some of the cases announcing it were collected, in Storseth v. State, 72 Idaho 49, 236 P.2d 1004, where we said:

"* * * The law does not favor repeal by implication. Where earlier and later acts are not necessarily in conflict, and may be reconciled by reasonable construction, no repeal results." 72 Idaho at page 51, 236 P.2d at page 1005.

█ Defendant makes the further contention that the earlier cooperative marketing act is general in nature, and that the later track buyers act is special or specific, dealing with a particular subject or class, and therefore prevails over the earlier act. We do not agree with this contention. Each statute is general in its application to all persons and organizations falling within its scope and purpose. Likewise, each act is special, in that each deals with a distinct and particular class of persons and organizations concerned in the marketing of farm products. The types of persons and organizations concerned in these statutes are wholly different and distinct each from the other, as is also the legislative objective of each. There is no inconsistency or conflict between them. To effect a repeal or amendment of the earlier act, in the absence of an irreconcilable conflict, the later act must contain some words expressing such intent. See Yakima Fruit Growers Association v. Henneford, 187 Wash. 252, 60 P.2d 62.

█ The following authorities support our view that the exemption in the cooperative marketing act is valid and subsisting: Kansas Wheat Growers' Ass'n v. Board of Commissioners of Sedgwick County, 119 Kan. 877, 241 P. 466; Yakima Fruit Growers' Ass'n v. Henneford, 182 Wash. 437, 47 P.2d 831, 100 A.L.R. 435; Department of Labor and Industry v. New Enterprise Rural Electric Co-op., Inc., 352 Pa. 413, 43 A.2d 90; City of Waycross v. Bell, 169 Ga. 57, 149 S.E. 641; Georgia Milk Producers Confederation v. City of Atlanta, 185 Ga. 192, 194 S.E. 181; City of Atlanta v. Georgia Milk Producers Confederation, 187 Ga. 117, 200 S.E. 712; Forrester v. Georgia Milk Producers Confederation, 66 Ga.App. 696, 19 S.E.2d 183; City of Griffin v. First Federal Savings & Loan Ass'n, 80 Ga.App. 217, 55 S.E.2d 771; Tigner v. State of Texas, 310 U.S. 141, 60 S.Ct. 879, 84 L.Ed. 1124.

█ We conclude that the plaintiff was not required to comply with the track buyers act, and that the trial court erred in so holding. The judgment of dismissal is reversed and the cause is remanded to the district court for further proceedings.

Costs to appellant.

KEETON, C. J., and PORTER, SMITH and McQUADE, JJ., concur.